UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

OSCAR ALEJANDRO VEGA PEREZ,
FELIPE DURAN, and CRISTIAN
RODRIGUEZ, on behalf of themselves and
others similarly situated,

              Plaintiffs,

-against-

ROADSTER COLLISION INC. d/b/a
CARSTAR ROADSTER COLLISION,
RBR HOLDINGS LLC, RICHARD
RAMNARINE, and TIFFINY TAJRAM a/k/a
TIFFANY TAJRAM,

              Defendants.

**COLLECTIVE AND
CLASS ACTION
COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Oscar Alejandro Vega Perez, Felipe Duran, and Cristian Rodriguez (collectively, "Plaintiffs"), by and through undersigned counsel, allege upon knowledge as to themselves and upon information and belief as to all other matters, as follows:

## 1. NATURE OF THE ACTION

1. This is a collective and class action for unpaid overtime wages, unpaid minimum wages under New York law, unpaid earned and final wages under New York law, unlawful deductions, and statutory wage-notice and wage-statement violations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and the New York Labor Law ("NYLL"), as well as supplemental New York State Human Rights Law ("NYSHRL") discrimination, harassment, retaliation, and related state-law claims arising from Defendants' treatment of Vega Perez and Duran because of their actual or perceived citizenship or immigration status and, as to Plaintiff Duran, because of and/or following a work-related physical injury. Defendants operated an auto-body and collision-repair business in Suffolk County, New York, using the name CARSTAR Roadster Collision and the corporate entity Roadster Collision Inc. Plaintiffs worked in non-exempt manual jobs, including painting, prep, assembly, disassembly, car cleaning, and related shop work.

2.   Defendants maintained a common policy and practice of failing to pay non-exempt workers overtime premiums for hours worked over forty in a workweek, paying some workers through off-system methods such as Zelle or checks while withholding required wage documentation, and using workers' immigration status as a basis to deny lawful pay and workplace protections.

3.   Plaintiffs bring this action on behalf of themselves and, as to the wage-and-hour claims, on behalf of other similarly situated current and former non-exempt employees who worked for Defendants in New York during the applicable limitations periods.

## 2.   JURISDICTION AND VENUE

4.   This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiffs assert claims under the FLSA, 29 U.S.C. §§ 206, 207, and 215(a)(3).

5.   This Court has supplemental jurisdiction over Plaintiffs' New York statutory and common-law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as the federal claims.

6.   Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred in this District, Defendants operated the subject business in Suffolk County, and one or more Plaintiffs resided and worked in this District during the relevant period.

## 3.   PARTIES

7.   Plaintiff Oscar Alejandro Vega Perez is an adult individual residing in Coram, New York. He worked for Defendants at CARSTAR Roadster Collision from approximately October 1, 2022 through August 7 or 8, 2024.

8. Plaintiff Felipe Duran is an adult individual residing in Shirley, New York. He worked for Defendants at CARSTAR Roadster Collision from approximately 2023 through 2024, including at minimum the period from approximately September 2023 through April 1, 2024.

9. Plaintiff Cristian Rodriguez is an adult individual who worked for Defendants at CARSTAR Roadster Collision from approximately May 15, 2024 through August 27, 2024.

10. Defendant Roadster Collision Inc. is, upon information and belief, a New York corporation doing business in New York under the name CARSTAR Roadster Collision. Upon information and belief, it maintained and/or used business addresses at 70 Comsewogue Road, Suite 17, East Setauket, New York 11733 and 13318 117th Street, South Ozone Park, New York 11420-3127.

11. Defendant Roadster Collision Inc. at all relevant times was Plaintiffs' employer within the meaning of the FLSA and NYLL and was engaged in interstate commerce and/or an enterprise engaged in commerce within the meaning of the FLSA.

12. Defendant RBR Holdings LLC is, upon information and belief, a New York limited liability company with a principal or mailing address at 13318 117th Street, South Ozone Park, New York 11420-3127.

13. Upon information and belief, RBR Holdings LLC was owned or controlled by Defendant Richard Ramnarine, shared business contact information, ownership, management, and/or operational control with Roadster Collision Inc., and functioned as part of the same integrated enterprise and/or joint-employer arrangement with the other Defendants relevant to Plaintiffs' employment.

14. Defendant Richard Ramnarine is an adult individual residing, upon information and belief, at or associated with 13318 117th Street, South Ozone Park, New York 11420-3127. He is the president, owner, member, and/or principal of one or more of the entity Defendants.

15. At all relevant times, Defendant Ramnarine had the power to hire and fire employees, supervise and control employee work schedules and conditions of employment, determine the rate and method of pay, maintain or control payroll and time records, and otherwise acted directly or indirectly in the interests of the corporate Defendants in relation to Plaintiffs.

16. Defendant Tiffiny Tajram a/k/a Tiffany Tajram ("Tajram") is an adult individual who, upon information and belief, resides in New York and was associated with the business and with Defendant Ramnarine during the relevant period.

17. At all relevant times, Tajram acted as an owner, co-owner, manager, payor, and/or person with authority over employee supervision and compensation. Plaintiffs observed or were told that Tajram participated in supervising work and paying wages, and at minimum Plaintiff Vega Perez dealt with Tajram as management.

18. Whenever this Complaint refers to any act of Defendants, the allegation shall be deemed to mean that each Defendant acted individually and/or by and through its or his or her agents, employees, owners, managers, officers, members, and representatives, all acting within the scope of their authority and in furtherance of Defendants' business.

## 4. FACTUAL ALLEGATIONS COMMON TO ALL PLAINTIFFS

19. Defendants operated an auto-body and collision-repair shop in East Setauket, New York, where they performed collision repair, painting, body work, prep work, cleaning, disassembly, assembly, and related automotive services.

20. Upon information and belief, Defendants employed approximately five or more employees at the relevant worksite.

21. Upon information and belief, Defendants' annual gross volume of sales made or business done was not less than $500,000 when measured as an enterprise and/or in the aggregate across the commonly controlled business operations alleged herein.

22.     In the course of their work, Plaintiffs handled goods and materials that had moved in interstate commerce, including automobile parts, tools, supplies, paint-related materials, and equipment.

23.     Plaintiffs were non-exempt employees. Their primary duties were manual labor, shop work, vehicle preparation, detailing, painting, assembly, disassembly, and similar tasks. They were not employed in any executive, administrative, or professional capacity exempt from the wage-and-hour laws invoked herein.

24.     Defendants failed to provide Plaintiffs with compliant written wage notices at hiring and failed to provide accurate wage statements with each payment of wages.

25.     Defendants also failed to maintain accurate contemporaneous records of all hours worked, regular rates, overtime rates, and wages paid. On information and belief, Defendants had timekeeping records but altered, withheld, or failed to use them accurately for wage payment purposes.

26.     Defendants maintained computerized timekeeping records at the shop. A workplace notice signed by "Tiffiny" instructed employees in Spanish that if they did not clock in and out correctly on the computer, management would calculate hours based on the computer records and would not entertain end-of-week complaints about hours. Upon information and belief, Defendants thus maintained electronic time records but failed to use them accurately for wage-payment purposes and/or failed to disclose accurate wage information to employees.

27.     Defendants paid some employees by check and/or Zelle and, on information and belief, kept at least some workers off regular payroll systems because of their actual or perceived citizenship or immigration status, including perceived lack of work authorization and/or tax documentation.

28.    Defendants maintained a common policy of paying straight time for overtime hours and of failing to pay all wages earned, especially where workers lacked conventional tax documentation or were perceived as lacking lawful work authorization.

29.    Defendants also made repeated immigration-related comments and threats in the workplace and told workers, in substance, that workers with legal status were entitled to rights or breaks that other workers were not.

30.    Defendants' wage-and-hour violations were willful. Defendants used timekeeping and payroll practices sufficient to know the hours Plaintiffs worked and the wages due, yet altered hours, failed to use accurate time records for wage-payment purposes, paid some employees by check and/or Zelle outside regular payroll practices, failed to provide required wage notices and wage statements, told Vega Perez he was not entitled to overtime or proper pay because he lacked tax documentation and/or because of his immigration status, and told Duran and other workers in substance that only workers with legal status deserved breaks. Defendants thereby knew of, or acted in reckless disregard of, their obligations under the FLSA and NYLL.

### 4.1. Plaintiff Vega Perez

31.    Vega Perez worked for Defendants from approximately October 1, 2022 through August 7 or 8, 2024 as a painter, prepper, assembler, disassembler, and related shop worker.

32.    Vega Perez was hired by "Rich," i.e., Defendant Ramnarine, and was supervised by Ramnarine and Tajram. Ramnarine and Tajram also paid his wages or caused them to be paid.

33.    Vega Perez's hourly rate began at approximately $18.00 per hour, later increased into the low-to-mid $20.00 range, and by around June 2024 was approximately $35.00 per hour when he began painting more regularly.

34.    Vega Perez typically worked at least approximately 50 hours per week and often substantially more. His schedule generally ran from about 8:00 a.m. to 6:00 p.m. or 7:00 p.m.

Monday through Friday, and he also worked on many Saturdays from about 8:00 a.m. to 2:00 p.m. or 4:00 p.m.

35.    By way of example, in one representative workweek during approximately June or July 2024, Vega Perez worked Monday through Friday from approximately 8:00 a.m. until approximately 6:00 p.m. and also worked Saturday from approximately 8:00 a.m. until approximately 2:00 p.m., for approximately 56 hours in that week. Defendants did not pay Vega Perez one-and-one-half times his regular rate for the approximately 16 hours worked over forty in that representative week.

36.    On many weekdays, including one or more representative workdays in approximately June or July 2024, Vega Perez worked from approximately 8:00 a.m. until approximately 7:00 p.m., such that the spread between the beginning and end of his workday exceeded ten hours. Defendants did not pay him any additional spread-of-hours compensation for those days.

37.    Despite those hours, Defendants did not pay Vega Perez one-and-one-half times his regular rate for hours worked over forty in a workweek. Instead, Defendants paid straight time or otherwise underpaid him for overtime hours.

38.    Defendants also failed to provide Vega Perez with accurate wage statements, failed to furnish a proper hiring notice, and failed to keep or disclose accurate records of his hours and wages.

39.    The hours reflected on Vega Perez's pay records did not accurately match the hours he actually worked, and, on information and belief, his time entries were changed.

40.    During his employment, Vega Perez repeatedly complained about his pay. He complained about his pay and overtime at least periodically during the job and again during the week before Defendants terminated him.

41.     In response to those complaints, Defendants told Vega Perez that he was not entitled to overtime or proper pay because he lacked a tax identification number and/or because of his immigration status.

42.     About one week after Vega Perez complained about his wages, Defendants fired him.

43.     Defendants also failed to pay Vega Perez for his final week of work. Based on Defendants' own pay practices and Vega Perez's hours and rate near the end of his employment, the unpaid final wages were approximately $1,600, or such other amount as may be determined at trial.

44.     After Vega Perez's employment ended, he attempted to retrieve a painting suit and/or related work clothing that he had purchased with his own money. Defendants accused him of theft or robbery and threatened to call the police because of his immigration status and for theft.

45.     Defendants further claimed that Vega Perez's clothing or items were missing and admitted that money was deducted from his wages on that basis, even though Vega Perez did not authorize any such deduction in writing for his own benefit.

46.     As a direct result of Defendants' conduct, Vega Perez suffered lost wages, statutory damages, emotional distress, embarrassment, humiliation, and related harms.

47.     Upon information and belief, one or more employees outside Plaintiffs Vega Perez's and Duran's protected class, including one or more documented or work-authorized employees performing equal or substantially similar shop work at the same East Setauket facility, were paid more favorably than Vega Perez and Duran, including with respect to overtime compensation, break treatment, wage rates, and/or payroll practices.

### 4.2. **Plaintiff Duran**

48.     Duran worked for Defendants in 2023 and 2024 as a prepper, assembler, disassembler, car washer, and related shop worker.

49.     From approximately September 2023 through December 2023, Duran was paid approximately $16.00 per hour. From approximately January 2024 through April 1, 2024, Duran was paid approximately $21.00 per hour.

50.     Duran generally worked weekdays from approximately 8:00 a.m. to 5:00 p.m. Defendants paid him weekly, often for only 40 hours, and discounted or deducted meal time from his pay.

51.     Defendants paid Duran directly through Roadster Collision Inc. checks and related bank deposits made payable to Luis Felipe Duran, including payments issued during and after the core period of his employment. Upon information and belief, Defendants did not provide compliant wage statements with those payments.

52.     Defendants also discounted or deducted lunch time from Duran's pay while simultaneously making immigration-based comments about who was or was not entitled to breaks.

53.     On or about January 8, 2024, Duran suffered an injury to his left finger at work and sought medical treatment, including stitches.

54.     When medical providers asked for employer information or when Duran sought help with the resulting bill, Defendants denied that he worked for them and told him, in substance, "why bother paying if you are an immigrant."

55.     Defendants also told Duran and other workers, in substance, that only workers with legal status deserved breaks and that workers whom Defendants viewed as lacking legal status should not bother asking for them.

56.     A manager identified as David advised Duran to record conversations with Defendants regarding payment of his medical bills and related issues. After Defendants learned Duran had recordings, they demanded that he delete them.

57.	Duran refused to delete the recordings. Defendants then terminated him, shortly after his injury, medical treatment, and opposition to Defendants' discriminatory and unlawful conduct.

58.	Following his January 8, 2024 work injury, Duran incurred emergency and related medical bills, including bills that were later sent to collection, after Defendants denied his employment and refused to address the consequences of the injury.

59.	As a direct result of Defendants' conduct, Duran suffered lost wages, emotional distress, humiliation, and other compensatory damages, and he is entitled to statutory, liquidated, punitive, and equitable relief as allowed by law.

### 4.3. **Plaintiff Rodriguez**

60.	Rodriguez worked for Defendants from approximately May 15, 2024 through August 27, 2024. He was initially hired to clean cars but was gradually given more work and broader shop duties over time.

61.	Rodriguez worked approximately 45 hours per week.

62.	By way of example, in a representative workweek during approximately summer 2024, Rodriguez worked approximately five days from about 8:00 a.m. to 5:00 p.m., for approximately 45 hours in the week, yet Defendants paid him only approximately $520 to $560 for that week by Zelle and did not provide a compliant wage statement or meaningful pay breakdown.

63.	Rodriguez was supposed to be paid approximately $16.00 per hour, but he was paid only about $520 to $560 per week by Zelle and did not receive any meaningful pay breakdown.

64.	Because Rodriguez worked approximately 45 hours per week but received only $520 to $560 for those hours, his effective hourly rate fell below New York's applicable minimum wage and below the wages he had been promised.

65.     Defendants did not provide Rodriguez with a compliant wage notice at hiring, did not provide compliant wage statements, did not obtain proper written authorization for electronic wage payment, and did not pay him his final week of wages.

66.     As a direct result of Defendants' conduct, Rodriguez suffered unpaid minimum wages, unpaid straight-time wages, unpaid final wages, statutory damages, and other damages to be proven at trial.

## 5.     COLLECTIVE AND CLASS ALLEGATIONS

67.     Plaintiffs bring Count I and, where applicable, other FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and all other similarly situated current and former non-exempt employees of Defendants who, during the applicable three-year period, worked in auto-body, painting, prep, assembly, disassembly, washing, detailing, or similar manual positions in New York and were not paid overtime premiums as required by federal law.

68.     The putative FLSA collective members are similarly situated to Plaintiffs because they performed similar non-exempt work, were subject to centralized ownership and control, worked pursuant to common compensation policies, and were affected by Defendants' common practice of paying straight time for overtime hours and/or paying workers outside regular payroll systems without the required wage documentation.

69.     Plaintiffs also bring their NYLL claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class consisting of all current and former non-exempt employees who worked for Defendants in New York during the applicable six-year period and who were subjected to the unlawful wage-and-hour policies alleged herein.

70.     Questions of law and fact are common to the proposed class, including but not limited to whether Defendants were Plaintiffs' employers; whether Defendants failed to pay overtime wages; whether Defendants failed to pay minimum wages to certain workers; whether

Defendants failed to provide wage notices and wage statements; whether Defendants made unlawful deductions; and whether Defendants failed to pay earned and final wages.

71.     The claims of the named Plaintiffs are typical of the claims of the members of the proposed class because they arise from the same compensation practices, recordkeeping failures, and management decisions.

72.     A class action is superior to other available methods for fairly and efficiently adjudicating these claims because the damages of many class members may be too small to make individual lawsuits economically feasible, while the common issues can be resolved efficiently in a single proceeding.

73.     Plaintiffs will fairly and adequately protect the interests of the putative class and collective and have retained counsel experienced in employment litigation.

## 6.  CAUSES OF ACTION

### 6.1.  Failure to Pay Overtime Wages in Violation of the FLSA

74.     Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

75.     At all relevant times, Defendants were employers of Plaintiffs within the meaning of the FLSA.

76.     At all relevant times, Defendants constituted an enterprise engaged in commerce within the meaning of the FLSA.

77.     The FLSA requires employers to pay non-exempt employees one-and-one-half times their regular rate of pay for all hours worked over forty in a workweek.

78.     Vega Perez and Rodriguez each worked more than forty hours in at least some workweeks, and Vega Perez did so regularly.

79.     Defendants willfully failed to pay Vega Perez, Rodriguez, and similarly situated employees the required overtime premium for hours worked over forty in a workweek.

80.    As a direct and proximate result of Defendants' FLSA violations, Plaintiffs and the FLSA collective are entitled to recover unpaid overtime compensation, liquidated damages, attorneys' fees, costs, and such other relief as the Court deems just and proper.

### 6.2. Retaliation in Violation of the FLSA

81.    Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

82.    Vega Perez engaged in protected activity when he complained to Defendants about unpaid wages, overtime, and related labor-law violations.

83.    Defendants were aware of Vega Perez's protected complaints.

84.    Shortly after those complaints, Defendants terminated Vega Perez.

85.    Defendants terminated Vega Perez because he complained about unpaid wages and overtime and because he opposed the wage-and-hour violations described in this Complaint.

86.    As a direct and proximate result of Defendants' retaliatory conduct, Vega Perez is entitled to lost wages, liquidated damages, reinstatement or front pay in lieu thereof, attorneys' fees, costs, and such other legal or equitable relief as the Court deems appropriate.

### 6.3. Failure to Pay Overtime Wages in Violation of the NYLL

87.    Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

88.    The NYLL and its implementing regulations require employers to pay non-exempt employees overtime at one-and-one-half times their regular rate of pay for hours worked over forty in a workweek.

89.    Defendants failed to pay Vega Perez, Rodriguez, and similarly situated employees the required overtime premium for overtime hours worked.

90.    Defendants' violations were willful and not in good faith.

91.     As a direct and proximate result of Defendants' NYLL overtime violations, Plaintiffs and class members are entitled to unpaid overtime wages, liquidated damages, prejudgment interest, attorneys' fees, costs, and other relief authorized by law.

### 6.4. Failure to Pay Minimum Wages in Violation of the NYLL - N.Y. Lab. Law §§ 652 and 663

92.     Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

93.     The NYLL requires employers to pay employees at least the applicable New York minimum wage for all hours worked.

94.     Rodriguez worked in Suffolk County during 2024, where the applicable New York minimum wage was higher than the federal minimum wage, yet Defendants paid him below that required rate when his weekly pay is divided by the hours he worked.

95.     Defendants failed to pay Rodriguez and similarly situated employees the minimum wage required by the NYLL.

96.     As a direct and proximate result of Defendants' conduct, Rodriguez and similarly situated employees are entitled to underpayments, liquidated damages, prejudgment interest, attorneys' fees, costs, and other relief authorized by law.

### 6.5. Failure to Pay Spread-of-Hours Compensation - NYLL and 12 N.Y.C.R.R. § 142-2.4

97.     Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

98.     Vega Perez and similarly situated employees worked days on which the spread between the beginning and end of the workday exceeded ten hours.

99.     Defendants failed to pay Vega Perez and similarly situated employees one additional hour of pay at the applicable basic minimum wage rate for each day on which their spread of hours exceeded ten hours.

100.    Defendants' failure to pay spread-of-hours compensation violated the NYLL and 12 N.Y.C.R.R. § 142-2.4.

101.    As a direct and proximate result of Defendants' conduct, Vega Perez and class members are entitled to unpaid spread-of-hours compensation, liquidated damages, prejudgment interest, attorneys' fees, costs, and all other relief authorized by law.

### 6.6.  Retaliation in Violation of the New York Labor Law - N.Y. Lab. Law § 215

102.    Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

103.    Vega Perez engaged in protected activity under the New York Labor Law by complaining to Defendants about unpaid wages, unpaid overtime, unlawful deductions, inaccurate pay records, and related wage practices that he reasonably and in good faith believed violated the NYLL.

104.    Defendants knew of Vega Perez's protected complaints.

105.    Defendants retaliated against Vega Perez by terminating him shortly after his complaints, withholding his final wages, threatening him with police and immigration-related consequences, and otherwise penalizing him for asserting rights protected by the NYLL.

106.    Defendants' conduct violated N.Y. Lab. Law § 215.

107.    As a direct and proximate result of Defendants' retaliation, Vega Perez is entitled to lost compensation, front pay or reinstatement where appropriate, liquidated damages, damages, costs, reasonable attorneys' fees, and all other relief available under N.Y. Lab. Law § 215.

108.    At or before commencement of this action, Vega Perez has served, or will contemporaneously serve, notice of this claim upon the New York Attorney General as required by N.Y. Lab. Law § 215(2)(b).

### 6.7.  Retaliation in Violation of New York Labor Law § 740

109.    Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

110.    Vega Perez disclosed, threatened to disclose, objected to, and/or refused to accept Defendants' wage-payment, payroll, recordkeeping, unlawful-deduction, and immigration-threat

practices, which he reasonably believed violated federal, state, and/or local laws, rules, or regulations.

111.    Defendants knew of Vega Perez's protected activity.

112.    Defendants took retaliatory action against Vega Perez, including terminating him, withholding his final wages, threatening him with police and immigration-related consequences, and otherwise penalizing him for opposing Defendants' unlawful practices.

113.    Defendants' conduct violated N.Y. Lab. Law § 740.

114.    As a direct and proximate result of Defendants' retaliation, Vega Perez is entitled to lost wages, front pay or reinstatement where appropriate, compensatory damages, punitive damages for willful, malicious, or wanton conduct, attorneys' fees, costs, civil penalties where available, and all other relief authorized by N.Y. Lab. Law § 740.

### 6.8. <u>Failure to Provide Wage Notices - N.Y. Lab. Law § 195(1)</u>

115.    Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

116.    NYLL § 195(1) requires employers, at the time of hiring, to provide non-exempt employees with a written notice, in English and in the employee's primary language, stating, among other things, the employee's rate or rates of pay, basis of pay, regular payday, employer name, any d/b/a name, physical address, telephone number, and regular and overtime rates of pay, and to obtain and preserve a signed acknowledgment.

117.    Defendants failed to provide Vega Perez and Rodriguez with compliant written wage notices at the time of hiring. Upon information and belief, Defendants likewise failed to provide Duran and similarly situated employees with compliant written wage notices and signed acknowledgments.

118.    Defendants did not furnish compliant written wage notices accurately stating the information required by NYLL § 195(1), including rates of pay, basis of pay, regular payday,

employer name, address, telephone number, and overtime-rate information, and failed to obtain and preserve compliant acknowledgments.

119.    Accordingly, Plaintiffs and class members are entitled to recover statutory damages, costs, and attorneys' fees under NYLL § 198.

**6.9.  Failure to Provide Wage Statements - N.Y. Lab. Law § 195(3)**

120.    Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

121.    NYLL § 195(3) requires employers to furnish employees with an accurate wage statement with every payment of wages, including, among other things, the dates of work covered by that payment, the employee's and employer's names, the employer's address and telephone number, rate or rates of pay and basis thereof, gross wages, deductions, net wages, and, for non-exempt employees, the regular hourly rate, overtime rate, number of regular hours worked, and number of overtime hours worked.

122.    Defendants failed to provide Plaintiffs and similarly situated employees with accurate wage statements or failed to provide wage statements at all. Vega Perez's pay records did not accurately reflect the hours he actually worked. Rodriguez was paid by Zelle without any meaningful pay breakdown. Duran was paid by Roadster Collision Inc. checks and related bank deposits without compliant wage statements accompanying those payments.

123.    Defendants' failure to provide accurate wage notices and wage statements caused Plaintiffs concrete injury by preventing them from determining the hours, rates, overtime rates, deductions, pay periods, employer identity, and wage calculations Defendants used; delaying and impairing Plaintiffs' ability to identify, contest, and recover underpayments; and requiring Plaintiffs to reconstruct their hours and wages from incomplete, inaccurate, and informal payment records.

124.    As a result, Plaintiffs and class members are entitled to recover statutory damages, costs, and attorneys' fees under NYLL § 198.

**6.10.**      **Unlawful Deductions from Wages - N.Y. Lab. Law § 193**

125.    Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

126.    NYLL § 193 prohibits employers from making deductions from employee wages except deductions that are required by law or expressly authorized in writing by the employee for the employee's benefit.

127.    Defendants deducted or withheld wages from Vega Perez based on alleged missing clothes or property and/or on a purported charge-back that was not required by law and not authorized in writing for Vega Perez's benefit.

128.    Those deductions were unlawful under NYLL § 193.

129.    As a direct and proximate result of Defendants' conduct, Vega Perez is entitled to recover the unlawfully deducted wages, liquidated damages where authorized, attorneys' fees, costs, interest, and other relief allowed by law.

**6.11. Failure to Pay Earned and Final Wages - N.Y. Lab. Law §§ 191 and 198**

130.    Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

131.    Vega Perez earned wages during his final week of work that Defendants did not pay by the next regular payday or at any time thereafter.

132.    Rodriguez likewise is owed his final paycheck and other earned wages that Defendants failed to pay.

133.    Defendants' failure to pay earned and final wages violated the NYLL.

134.    As a direct and proximate result of Defendants' conduct, Vega Perez and Rodriguez are entitled to recover their unpaid earned wages, statutory and liquidated damages where available, prejudgment interest, attorneys' fees, costs, and other relief authorized by law.

**6.12.**      **Conversion**

135.    Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

136. Vega Perez owned and had an immediate superior right to possess his painting suit, work clothing, and/or related personal property that he purchased with his own money.

137. After his employment ended, Vega Perez demanded and/or attempted to retrieve that personal property from Defendants.

138. Defendants intentionally and without authorization refused to return, withheld, disposed of, or otherwise exercised dominion and control over Vega Perez's personal property in derogation of his ownership and possessory rights.

139. Defendants' conduct constitutes conversion under New York law.

140. As a direct and proximate result of Defendants' conversion, Vega Perez is entitled to the return of the property if still available, or the value of the property if return is unavailable, together with interest, damages, costs, and such other relief as the Court deems just and proper.

### 6.13.   Citizenship/Immigration-Status Discrimination - N.Y. Exec. Law §§ 296 and 297

141. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

142. The NYSHRL prohibits employers from discriminating against employees in hiring, discharge, compensation, and the terms, conditions, or privileges of employment because of citizenship or immigration status.

143. Defendants paid Vega Perez and Duran differently, denied them lawful overtime and other workplace rights, made compensation and discipline decisions, and threatened them because of their citizenship or immigration status and/or perceived lack of lawful work authorization.

144. Defendants expressly told Vega Perez that he was not entitled to overtime or proper pay because of his lack of tax documentation and/or immigration status, and told Duran that his medical expenses were not worth paying because he was an immigrant and that only workers with legal status were entitled to breaks.

145.    Defendants' conduct was intentional, willful, malicious, and/or in reckless disregard of Plaintiffs' rights.

146.    As a direct and proximate result of Defendants' discriminatory acts, Vega Perez and Duran suffered economic loss, emotional distress, humiliation, and other damages and are entitled to compensatory damages, punitive damages, attorneys' fees where available, costs, and such other relief as the Court deems just and proper.

**6.14.    Hostile Work Environment / Harassment Based on Citizenship or Immigration Status - N.Y. Exec. Law §§ 296 and 297**

147.    Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

148.    Defendants subjected Vega Perez and Duran to repeated derogatory immigration-related comments, threats, unequal workplace rules, and other conduct that treated them as inferior because of their citizenship or immigration status.

149.    Among other things, Defendants stated that workers whom Defendants viewed as lacking legal status or lawful work authorization were not entitled to overtime or breaks and could be threatened with police involvement or denial of workplace protections because of that perceived status.

150.    This conduct subjected Vega Perez and Duran to inferior terms, conditions, and privileges of employment because of a protected characteristic and created an unlawfully hostile work environment under New York law.

151.    As a direct and proximate result of Defendants' harassment, Vega Perez and Duran suffered emotional distress, humiliation, and other damages and are entitled to legal and equitable relief.

**6.15.    Retaliation in Violation of the NYSHRL - N.Y. Exec. Law §§ 296 and 297**

152.    Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

153. Vega Perez opposed discriminatory and unlawful wage practices by complaining about his pay and overtime and by objecting to Defendants' immigration-based treatment of workers.

154. Duran opposed discriminatory and unlawful treatment by seeking payment or assistance for his injury-related medical care, objecting to discriminatory break rules, preserving recordings of those issues, and refusing to delete that evidence.

155. Defendants knew about Plaintiffs' opposition to discriminatory practices.

156. Defendants retaliated against Vega Perez and Duran by terminating them and/or otherwise worsening the terms and conditions of their employment.

157. As a direct and proximate result of Defendants' retaliatory conduct, Vega Perez and Duran are entitled to compensatory damages, punitive damages, attorneys' fees where available, costs, and such other relief as the Court deems just and proper.

### 6.16.    Disability Discrimination and Retaliation - N.Y. Exec. Law §§ 292, 296, and 297

158. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

159. Following his work-related finger injury, Duran had a physical impairment and/or was regarded by Defendants as having such an impairment within the broad meaning of the NYSHRL.

160. Defendants denied or interfered with Duran's attempts to address the consequences of that injury, denied his employment status to medical providers, and terminated him shortly after his injury and opposition to Defendants' treatment of him.

161. Defendants discriminated and retaliated against Duran because of his injury, perceived impairment, and/or requests or efforts related to medical treatment and workplace relief after the injury.

162.    As a direct and proximate result of Defendants' conduct, Duran suffered lost wages, emotional distress, humiliation, and other damages and is entitled to compensatory damages, punitive damages, attorneys' fees where available, costs, and other relief authorized by law.

**6.17.    Differential in Rate of Pay Because of Protected Class Status - N.Y. Lab. Law §§ 194 and 198**

163.    Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

164.    At all relevant times, Defendants Roadster Collision Inc. d/b/a CARSTAR Roadster Collision, RBR Holdings LLC, Richard Ramnarine, and Tiffiny Tajram a/k/a Tiffany Tajram were employers of Plaintiffs Oscar Alejandro Vega Perez and Felipe Duran within the meaning of the New York Labor Law.

165.    At all relevant times, Plaintiffs Vega Perez and Duran were members of a protected class, including based on citizenship and/or immigration status.

166.    Defendants employed Vega Perez, Duran, and comparator employees at the same establishment within the meaning of N.Y. Lab. Law § 194, including at the CARSTAR Roadster Collision facility located at 70 Comsewogue Road, Suite 17, East Setauket, New York, in Suffolk County.

167.    Vega Perez and Duran performed equal work, or at minimum substantially similar work, as one or more comparator employees outside their protected class, including painter, prepper, assembler, disassembler, cleaning, detailing, and related shop work requiring substantially similar skill, effort, and responsibility and performed under similar working conditions.

168.    Upon information and belief, one or more comparator employees outside Plaintiffs' protected class, were paid more favorably than Vega Perez and/or Duran for equal or substantially similar work, including by receiving lawful overtime compensation, more favorable wage rates, paid breaks and/or break treatment, regular payroll treatment, and/or other compensation practices not afforded to Vega Perez and Duran.

169.    By contrast, Defendants paid Vega Perez and Duran less favorably, including by paying straight time for hours worked over forty, denying overtime premiums, deducting or discounting break time from pay, paying wages by check and/or Zelle outside regular payroll practices, and otherwise denying compensation and payroll protections afforded to comparator employees.

170.    Defendants expressly tied those pay practices and compensation decisions to Vega Perez's and Duran's citizenship and/or immigration status, including by telling Vega Perez that he was not entitled to overtime or proper pay because he lacked tax documentation and/or because of his immigration status, telling Duran in substance "why bother paying if you are an immigrant," and telling workers that "only people with legal status" deserved breaks.

171.    Any differential in compensation, payroll treatment, or pay practices between Plaintiffs and comparator employees was not based on a seniority system, a merit system, a system measuring earnings by quantity or quality of production, or any bona fide factor other than protected-class status.

172.    Defendants' conduct was intentional, malicious, reckless, and/or willful.

173.    As a direct and proximate result of Defendants' unlawful conduct, Vega Perez and Duran suffered lost wages, wage differentials, other compensatory damages, and related harm.

174.    Pursuant to N.Y. Lab. Law §§ 194 and 198, Vega Perez and Duran are entitled to recover all wage differentials and other compensation due, liquidated damages as permitted by law, including enhanced liquidated damages for any willful violation of § 194, prejudgment interest to the extent permitted by law, attorneys' fees, costs, and such other legal and equitable relief as the Court deems just and proper.

7. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully demand judgment against Defendants, jointly and severally where permitted by law, as follows:

A. Certifying this action as a collective action under 29 U.S.C. § 216(b) and authorizing notice to the FLSA collective;

B. Certifying this action as a class action under Rule 23 of the Federal Rules of Civil Procedure for the New York Labor Law claims, appointing Plaintiffs as class representatives, and appointing undersigned counsel as class counsel;

C. Awarding Plaintiffs and the FLSA collective unpaid overtime compensation under the FLSA, together with an equal amount as liquidated damages;

D. Awarding Plaintiffs and the Rule 23 class unpaid overtime wages, unpaid minimum wages, unpaid earned and final wages, unlawfully deducted wages, statutory damages, and all other wages and compensation due under the New York Labor Law;

E. Awarding Vega Perez and Rodriguez their unpaid earned and final wages, together with all statutory, liquidated, and interest remedies available under the NYLL;

F. Awarding Plaintiffs and the Rule 23 class statutory damages for Defendants' failure to provide compliant wage notices and wage statements under N.Y. Lab. Law §§ 195 and 198;

G. Awarding Vega Perez and Duran compensatory damages, including economic damages and damages for emotional distress, humiliation, embarrassment, and other non-economic harm, on their NYSHRL discrimination, harassment, and retaliation claims;

H. Awarding Duran compensatory damages, including economic damages and damages for emotional distress and related harm, on his NYSHRL disability discrimination and retaliation claim;

I.   Awarding punitive damages to the extent permitted by law on Plaintiffs' NYSHRL claims;

J.   Awarding Vega Perez and Duran all wage differentials and other compensation due under N.Y. Lab. Law §§ 194 and 198, together with liquidated damages, including any enhanced liquidated damages permitted for a willful violation, prejudgment interest to the extent permitted by law, attorneys' fees, costs, and such other relief as the Court deems just and proper;

K.   Awarding Vega Perez all relief available under N.Y. Lab. Law §§ 215 and 740, including lost compensation, front pay or reinstatement where appropriate, liquidated damages under § 215, punitive damages under § 740 where permitted, attorneys' fees, costs, and all other statutory relief;

L.   Awarding Vega Perez and the Rule 23 class unpaid spread-of-hours compensation, liquidated damages, prejudgment interest, attorneys' fees, costs, and all other relief authorized by law;

M.   Awarding Vega Perez the return of his converted personal property or, if return is unavailable, the value of that property, together with interest, damages, costs, and all other appropriate relief;

N.   Awarding pre-judgment interest and post-judgment interest as permitted by law;

O.   Awarding reasonable attorneys' fees, litigation expenses, costs, and disbursements;

P.   Awarding declaratory and injunctive relief to the extent permitted by law; and

Q.   Granting such other and further legal or equitable relief as the Court deems just and proper.

## 8. **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

Dated: July 13, 2026                                      Respectfully submitted,
          Astoria, New York

                                                                  */s/ Clifford Tucker*

Clifford Tucker, Esq.
Sacco & Fillas LLP
31-19 Newtown Ave., 7th Floor
Astoria, New York 11102
Phone: 718-269-2243
CTucker@SaccoFillas.com

## CONSENT TO JOIN ACTION

## REQUEST TO BECOME A PARTY-PLAINTIFF

I hereby consent to be a party plaintiff in an action to recover unpaid wages, including but not limited to minimum wages, overtime, spread of hours, gratuities, statutory and liquidated damages, attorney's fees, costs, interest, and other sums owing to me and other similarly situated employees under the federal Fair Labor Standards Act, New York Labor Law, and implementing regulations and wage orders.

I hereby authorize Sacco & Fillas LLP to pursue any claims I may have, including such litigation as may be necessary, and I hereby consent, agree, and option to become a plaintiff herein and to be bound by any settlement of this action or adjudication by the Court.

Translation / Traducción:

Por la presente, doy mi consentimiento para ser parte demandante en una acción para recuperar salarios no pagados, incluidos, entre otros, salarios mínimos, horas extras, horarios extendidos, gratificaciones, daños legales y liquidados, honorarios de abogados, costos, intereses y otras sumas que se me adeudan. y otros empleados en situaciones similares bajo la Ley Federal de Normas Laborales Justas, la Ley Laboral de Nueva York y las reglamentaciones de implementación y órdenes salariales.

Por la presente, autorizo a Sacco & Fillas LLP a presentar cualquier reclamo que pueda tener, incluido el litigio que sea necesario, y por la presente consiento, acepto y tengo la opción de convertirme en demandante en este documento y estar obligado por cualquier acuerdo de esta acción o adjudicación por La corte.

Name/Nombre: _Oscar Alejandro Vega Perez_____

Legal Representative:
Sacco & Fillas LLP
3119 Newtown Ave, Seventh Floor Astoria, NY 11102

Signature/Firma: Oscar Vega (Aug 16, 2024 12:45 EDT)_____    Date/Fecha: _____August 16, 2024_____

## CONSENT TO JOIN ACTION

## REQUEST TO BECOME A PARTY-PLAINTIFF

I hereby consent to be a party plaintiff in an action to recover unpaid wages, including but not limited to minimum wages, overtime, spread of hours, gratuities, statutory and liquidated damages, attorney's fees, costs, interest, and other sums owing to me and other similarly situated employees under the federal Fair Labor Standards Act, New York Labor Law, and implementing regulations and wage orders.

I hereby authorize Sacco & Fillas LLP to pursue any claims I may have, including such litigation as may be necessary, and I hereby consent, agree, and option to become a plaintiff herein and to be bound by any settlement of this action or adjudication by the Court.

Translation / Traducción:

Por la presente, doy mi consentimiento para ser parte demandante en una acción para recuperar salarios no pagados, incluidos, entre otros, salarios mínimos, horas extras, horarios extendidos, gratificaciones, daños legales y liquidados, honorarios de abogados, costos, intereses y otras sumas que se me adeudan. y otros empleados en situaciones similares bajo la Ley Federal de Normas Laborales Justas, la Ley Laboral de Nueva York y las reglamentaciones de implementación y órdenes salariales.

Por la presente, autorizo a Sacco & Fillas LLP a presentar cualquier reclamo que pueda tener, incluido el litigio que sea necesario, y por la presente consiento, acepto y tengo la opción de convertirme en demandante en este documento y estar obligado por cualquier acuerdo de esta acción o adjudicación por La corte.

Name/Nombre: ___Felipe Duran___

Legal Representative:
Sacco & Fillas LLP
3119 Newtown Ave, Seventh Floor
Astoria, NY 11102

Signature/Firma: _Felipe Duran (Oct 24, 2024 15:42 EDT)_    Date/Fecha: ___October 24, 2024___

## CONSENT TO JOIN ACTION

## REQUEST TO BECOME A PARTY-PLAINTIFF

I hereby consent to be a party plaintiff in an action to recover unpaid wages, including but not limited to minimum wages, overtime, spread of hours, gratuities, statutory and liquidated damages, attorney's fees, costs, interest, and other sums owing to me and other similarly situated employees under each and every federal and state wage and hour law, rule and regulation which may include but is not limited to the federal Fair Labor Standards Act, New York Labor Law, New Jersey Wage and Hour Law, and any other applicable law, rule, regulation, and wage order.

I hereby authorize Sacco & Fillas LLP to pursue any claims I may have, including such litigation as may be necessary, and I hereby consent, agree, and option to become a plaintiff herein and to be bound by any settlement of this action or adjudication by the Court.


Name: __Cristian Rodriguez__

Legal Representative:
Sacco & Fillas LLP
3119 Newtown Ave, Seventh Floor
Astoria, NY 11102


Signature: Cristian Rodriguez (Nov 15, 2024 20:47 EST)          Date: __November 15, 2024__